**CROSNER LEGAL, P.C.**
Michael R. Crosner (SBN 41299)
Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)
Craig W. Straub (SBN 249032)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429
mike@crosnerlegal.com
zach@crosnerlegal.com
chad@crosnerlegal.com
craig@crosnerlegal.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JINHUI KIM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC.,<br><br>Defendant. | Case No.: 2:22-cv-08380-SB-PVC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Stanley Blumenfeld Jr.<br>Courtroom: 6C<br><br>Filed: October 6, 2022<br>Trial Date: Not Set<br><br>**JURY TRIAL DEMANDED** |

CROSNER LEGAL, P.C.

Plaintiff Jinhui Kim ("Plaintiff") brings this action against Defendant Walmart Inc. ("Defendant" or "Walmart"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.    This is a consumer protection action brought by Plaintiff, on behalf of herself and all others similarly situated, to remedy Defendant's continuing sale to consumers of its Spark Toys for Children "2+" Products which contain extremely high levels of phthalates, including Di-n-octyl phthalate ("Spark Toys" or "Products").

2.    Defendant has and continues to manufacture, distribute, sell, and offer to sell Spark Squishy Animals toys (including but not limited to item #76183; 0-84495-76183-7) and Spark Animal Set toys (including but not limited to item #75749; 0-84496-75740-6) to consumers containing extremely high levels of phthalates, including Di-n-octyl phthalate ("DNOP").

3.    The Spark Toys are labeled for children ages "2+."

4.    The Spark Toys are approximately three inches in length and contain small protruding appendages (i.e., ears, legs, tails) which can easily be placed in a child's mouth.

5.    Consumers purchase the Spark Toys for young children reasonably believing that they are non-toxic, safe for children, and comply with governmental safety standards. However, the Products contain dangerously high levels of DNOP in violation of state law.

6.    Scientific research has repeatedly concluded that children are especially vulnerable to the toxic effects of phthalates. Accordingly, California Health & Safety Code § 108937 provides limitations for the levels of phthalates than can be in

FIRST AMENDED CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

children's toys. For example, subsection (b) provides that no entity shall manufacture, sell, or distribute toys intended for children under three years of age if the toy contains DNOP in concentrations exceeding 0.1 percent. Here, the concentrations of DNOP in the Products **are over forty times** the maximum limit allowed by the state of California. California consumers, including young children under the age of three, are at extreme risk of exposure to phthalates from the Products.

7.    As a direct and proximate result of Defendant's unlawful, false, and misleading advertising and marketing practices, Defendant has caused Plaintiff and the members of the Class to purchase an unlawful product which does not, and cannot, perform as represented. Plaintiff and other similarly situated consumers have been harmed in the amount they paid for the Spark Toys.

8.    Plaintiff brings this action individually, and on behalf of all purchasers of the Products, to halt Defendant's unlawful sales and marketing of these products and for violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, breach of express warranties, and for unjust enrichment.

## JURISDICTION AND VENUE

9.    California states courts have jurisdiction pursuant to Article VI, Section 10 of the California Constitution and California Code of Civil Procedure § 410.10.

10.    This Superior Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sales of Spark Toys to consumers, including Plaintiff.

11.    Venue is proper in Los Angeles County Superior Court because one or more of the occurrences of the wrongful conduct occurred, and continues to occur, in

CROSNER LEGAL, P.C.

Los Angeles County, and Defendant conducted, and continues to conduct, business in Los Angeles County.

12. Defendant alleges that this Court has jurisdiction because there is diversity of citizenship and the amount in controversy exceeds $75,000. *See* Dkt. No. 1 (Notice of Removal).

## **PARTIES**

13. Plaintiff Jinhui Kim is an individual consumer who, at all times relevant to this action, was a citizen of and resided in California. Before purchasing Defendant's Spark Toys, Plaintiff saw Defendant's representations by reading the label of the "Spark Create Imagine Animal Set 2+" 6-piece product and "Spark Create Imagine Squishy Animals 2+" 4-piece product, including that the Products were for children ages "2+."  In reliance on the labeling claims that the Products were for children under the age of three and on the belief that the products were safe for children under the age of three, Plaintiff purchased the Spark Toys at a Walmart retail store located at 1827 Walnut Grove Ave., Rosemead, California in August 2022. Relying on the Product's representations, Plaintiff paid approximately $3 for the Spark Imagine Squishy Animals toys and approximately $5 for the Spark Imagine Animal Set toys. In total, Plaintiff spent approximately $14 on Defendant's Spark Toys. Had Plaintiff known the truth—that the Products do not comply with California law and are harmful to children under the age of three—she would not have purchased the Products. Plaintiff did not receive the benefit of the bargain, because Defendant's Products do not and cannot be legally purchased. By purchasing the unlawful and dangerous Products, Plaintiff suffered injury-in-fact and lost money. Plaintiff continues to desire to purchase a Spark Toy product if lawfully sold and not dangerous to children and would purchase a Spark Toy product including one of Defendant's Products in the future if it complied with the law and was safe for children. However, as a result of Defendant's ongoing false and unlawful advertising, Plaintiff will be

CROSNER LEGAL, P.C.

unable to rely on the advertising when deciding in the future whether to purchase the Products.

14.    Defendant Walmart Inc. is a publicly-traded Delaware corporation, with a principal place of business in Bentonville, Arkansas. Defendant manufactures, markets, and advertises and distributes the Products throughout the United States, including in California. Defendant manufactured, marketed, and sold the Spark Toys during the Class Period. The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business operations concerning the Spark Toys were carried out by Defendant.

15.    Walmart sells the Spark Toys under the brand name "Spark Create Imagine" which is Walmart's trademarked brand.

## **FACTUAL BACKGROUND**

**A.    Defendant's Advertising and Labeling of the Spark Toys**

16.    Defendant's Spark Toys are sold nationwide at Walmart retail chains. On the packaging of the Spark Toys Defendant advertises that they are safe for children "2+":




FIRST AMENDED CLASS ACTION COMPLAINT



17.   Defendant reinforces that the products are safe for young children by stating that the Products encourage "Fine Motor Skills, Sensory Development, and Holding":



18.   Similarly, on Defendant's website, walmart.com, Defendant advertises that the Products are safe for children "2 Years & Up" which is highlighted below:

**Brand**

Spark Create Imagine

**Assembled Product Weight**

0.5 lb

**Age Range**

2 Years & Up

**Gender**

Unisex

**Manufacturer Part Number**

76183

**Features**

Multicolored assortment of animal figurines

**Brand**

Spark Create Imagine

**Manufacturer Part Number**

75749

**Gender**

Unisex

**Age Range**

2 to 4 years

## B.    The Dangers of Phthalates

19.    Phthalates, or esters of phthalic acid, are environmental pollutants. Phthalates are plasticizers which make polymer materials elastic to make the final product cheaper and easier to produce. Phthalates do not form covalent bonds with the polymers with which they are mixed, and thus, can migrate to products surface and which can be released to the environment. Phthalates enter a child's system through the digestive system, through contact with skin, and through the licking and sucking of objects made of plastics. Young children are at risk of excessive exposure to phthalates because they often place non-consumable objects in the mouth.

20.    Phthalates which the scientific community and regulatory agencies have expressed concern for causing negative health effects are di-(2-ethylhexyl) phthalate (DEHP), dibutyl phthalate (DBP), benzyl butyl phthalate (BBP), diisononyl phthalate (DINP), diisodecyl phthalate (DIDP), and DNOP.

21.    Phthalates negatively impact the growth and development of the human fetus, infants, and toddlers. They can cause a dysfunction of the hormonal system by disturbing the synthesis, concentration, and action of natural hormones responsible

CROSNER LEGAL, P.C.

for the growth and development of sex organs. Phthalates have been found to affect estrogen and androgen receptor; exert a negative effect on androgens including hypospadias (abnormal location of the male external urethral orifice on the ventral side of the penis); impair sperm function by lowering sperm counts and sperm motility increasing the risk of impairment of sperm function and mobility; and reduce testosterone production. Phthalates have also been found to negatively impact a child's immune system causing an increased risk of asthma and allergies.

22.    As such, the California legislature has prohibited the use of phthalates, including DNOP, in concentrations exceeding 0.1 percent by mass in any toy or childcare product intended for use by a child under the age of three years if the product can be placed in the child's mouth.    Heath & Saf. Code § 108937. California Assembly Bill 1108 was passed on January 1, 2009, and specifically states that "[t]here  is extensive scientific literature reporting the hormone-disrupting effects phthalates and substantial evidence that levels of the phthalates of concern are found in humans at levels associated with adverse effects." Cal. A.B. No.1108 at §1(b) (Jan 1, 2009).

23.    Likewise, the European Commission Regulation prohibits the use of phthalates, including DNOP, at concentrations above 0.1 percent by mass from being used in toys and childcare products which can be placed in the mouth of a child.

24.    Vermont's Department of Public Health issued a report in November 2018. It found that DNOP "can affect how babies develop as well as harm the liver, kidney, thyroid and immune system in humans." It also noted that DNOP exposure occurs from skin contact with consumer products that contain DNOP.

25.    The American Academy of Pediatrics ("AAP") states that phthalates are some of the most concerning additives in child products because they "may affect male  genital  development,  increase  childhood  obesity,  and  contribute  to cardiovascular disease." The AAP has also published findings that "several studies

FIRST AMENDED CLASS ACTION COMPLAINT

have reported detectable concentrations of phthalate metabolites in children's urine. Concerns over phthalate toxicity have emerged because of growing evidence of adverse impacts on endocrine, reproductive, immunologic and neurologic system function in animals and humans." The AAP warns that "early childhood [is] thought to be the most sensitive time windows for potential adverse health impacts given the rapid period of cell differentiation and organ development."

26.    Silva and co-authors (2021) published research examining 471 children in a population based and cross-sectional study. The authors examined phthalate and bisphenol urinary concentrations and concluded that "DNOP metabolites are associated with overweight and an adverse cardiovascular profile in childhood."[1] The authors note that the scientific evidence has shown that phthalates are considered endocrine disrupting chemicals that affect childhood health and children are more vulnerable to exposure to these chemicals than adults. "As a result of the widespread use of phthalate metabolites and bisphenols-related products, children can be exposed to these potential harmful chemicals through different pathways, such as ingestion, inhalation, and dermal contact. Phthalates and bisphenols may interfere with endocrine processes, resulting in a deviation from the normal homeostatic control that may lead to an adverse cardiovascular profile."

27.    Despite these prohibitions and known dangers to children, Defendant has sold and continues to sell the Products which contain extremely high levels of DNOP. Instead of warning consumers and parents, Defendant advertises that the Spark Toys are to be used by children as young as two.

---

[1]    Silva C.V.C et al. Phthalate and Bisphenol Urinary Concentrations, Body Fat Measures, and Cardiovascular Risk Factors in Dutch School-Age Children. Obesity. 2021.29:409-417.

FIRST AMENDED CLASS ACTION COMPLAINT

## C. Certified Laboratory Testing Confirms the Spark Toys Contain DNOP Levels which Exceed the Legal Limit

28.     Certified testing by an accredited laboratory conducted tests of the Spark Toys. The laboratory tests concluded that the Spark Toys contain between 3.84 to 4.19 percent by mass Di-n-octyl phthalate. This is approximately forty times California's legally allowed amount of DNOP.

## **THE IMPACT OF DEFENDANT'S WRONGFUL CONDUCT**

29.     Defendant has ignored California law and the scientific evidence demonstrating that products containing high levels of phthalates, including DNOP, are not safe for children. Yet, Defendant advertises Spark Toys as safe for children as young as two years of age when they, in fact, contain unlawful levels of DNOP. Consumers, like Plaintiff, have relied on Defendant's misrepresentation that Spark Toys are safe for children two and older. Defendant's omissions and misrepresentations have caused numerous consumers to purchase the Products for their young children, relying on Defendant's false claims that Spark Toys are safe for children.

30.     As the distributor and marketer of Spark Toys, Defendant possesses specialized knowledge regarding its content and effects of its ingredients, and Defendant is in a superior position to know whether Spark Toys are safe for children as young as two.

31.     Specifically, Defendant knew, but failed to disclose, or should have known, that its Spark Toys are a product that is unlawfully sold, as it contains unlawful concentrations of DNOP, and may harm children.

32.     Defendant knew, but failed to disclose, or should have known, that Spark Toys are toxic for children because the science has determined that phthalates, including DNOP are harmful to children, as explained above.

33.   Plaintiff and the Class members have been and will continue to be deceived or misled by Defendant's false and deceptive representations that Spark Toys are safe for children.

34.   Defendant's representations and omissions were a material factor in influencing Plaintiff's and the class members' decision to purchase Defendant's Spark Toys. Defendant's conduct has injured Plaintiff and the class members because Spark Toys are not safe for young children as they contain unlawful concentrations of DNOP. Spark Toys retail for approximately $3-$5 for a set of toys. Had Plaintiff and other reasonable consumers known this, they would not have purchased Spark Toys or would not have paid the prices they paid. Furthermore, had Plaintiff and other reasonable consumers known that Spark Toys are not safe for children and cannot be legally sold, they would not have purchased Spark Toys or would not have paid the prices they paid.

## CLASS ACTION ALLEGATIONS

35.   Plaintiff brings this class action pursuant Cal. Code. Civ. Proc. § 382 on behalf of the following classes:

**Nationwide Class (the "Class")**
All persons who purchased Spark Toys for personal use in the United States until the date notice is disseminated.

**Multi-State Class (the "Multi-State Class")**
All persons who purchased Spark Toys for personal use in California and other states with similar laws[2] until the date notice is

[2]   While discovery may alter the following, Plaintiff preliminarily avers other states with similar express warranty laws under the facts of this actions include, but are not limited to: Alaska Stat. section 45.02.313; A.R.S. section 47-2313; A.C.A. section 4-2-313; Cal. Com. Code section 2313; Colo. Rev. Stat. section 4-2-313; Conn. Gen. Stat. section 42a-2-313; 6 Del. C. section 2-313; D.C. Code section 28:2-313; O.C.G.A. section 11-2-313; HRS section 490:2-313; Idaho Code section 28-2-313; 810 ILCS 5/2-313; Ind. Code section 26-1-2-313; K.S.A. section 84-2-313; KRS section 355.2-313; 11 M.R.S. section 2-313; Mass. Gen. Laws Ann. ch. 106 section 2-313; Minn. Stat. section 336.2-313; Miss. Code Ann. section 75-2-

FIRST AMENDED CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

disseminated.

**California Subclass (the "Subclass")**
All persons in California who purchased Spark Toys for personal use until the date notice is disseminated.

(collectively, the "Classes").

36.    Excluded from the from the Classes are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

37.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

38.    The Classes are appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

39.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

---

313; R.S. Mo. Section 400.2-313; Mont. Code Anno. Section 30-2-313; Neb. Rev. Stat. section 2-313; Nev. Rev. Stat. Ann. section 104.2313; RSA 382-A:2-313; N.J. Stat. Ann. section 12A:2-313; N.M. Stat. Ann. section 55-2-313; N.Y. U.C.C. Law section 2-313; N.C. Gen. Stat. section 25-2-313; N.D. Cent. Code section 41-02-30; ORC Ann. section 1302.26; 12A Okl. St. section 2-313; Or. Rev. Stat. section 72-3130; 13 Pa.C.S. section 2313; R.I. Gen. Laws section 6A-2-313; S.C. Code Ann. section 36-2-313; S.D. Codified Laws, section 57A-2-313; Tenn. Code Ann. section 47-2-313; Tex. Bus. & Com. Code section 2.313; Utah Code Ann. section 70A-2-313; 9A V.S.A. section 2-313; Va. Code Ann. section 59.1-504.2; Wash. Rev. Code Ann. section 62A.2-313; W. Va. Code section 46-2-313; and Wyo. Stat. section 34.1-2-313.

CROSNER LEGAL, P.C.

40.   <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.  Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b.  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

    c.  Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive the public;

    d.  Whether Plaintiff and the Classes are entitled to injunctive relief;

    e.  Whether Plaintiff and the Classes are entitled to money damages under the same causes of action as the other Class Members.

41.   <u>Typicality</u>: Plaintiff is a member of the Classes Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Classes was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

42.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud, breach of warranty, and unjust enrichment claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating Plaintiff's rights; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the

CROSNER LEGAL, P.C.

Classes. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Classes, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

43.   The Classes are properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

FIRST AMENDED CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

g. The Classes are readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase the Products.

44. In the alternative, the Classes may be certified because Defendant has acted or refused to act on grounds generally applicable to the Classes thereby making final declaratory and/or injunctive relief with respect to the members of the Classes as a whole, appropriate.

45. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Classes, on grounds generally applicable to the Classes, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and Class members.

46. Unless the Classes are certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Classes and the general public will continue to be misled.

## <u>COUNT I</u>

### Violation of Consumer Legal Remedies Act ("CLRA")
### Civil Code §§ 1750, *et seq*

47. Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs as if fully set forth verbatim herein.

48.    Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

49.    At all times relevant hereto, Plaintiff and members of the Class were "consumer[s]," as defined in Civil Code section 1761(d).

50.    At all relevant times, Defendant constituted a "person," as defined in Civil Code section 1761(c).

51.    At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in Civil Code section 1761(a).

52.    The purchases of the Products by Plaintiff and members of the Class were and are "transactions" within the meaning of Civil Code section 1761(e).

53.    Defendant disseminated, or caused to be disseminated, through its advertising—that the Products are safe for children as young as two and are lawfully sold in California which they are not because the Products contain unlawful levels of DNOP and are dangerous to young children. Defendant's representations and/or omissions violate the CLRA by:

(a)    Defendant misrepresented the source, sponsorship, approval, or certification of the Products (Civil Code § 1770(a)(2));

(b)    Defendant represented that the Products have approval, characteristics, uses or benefits that they do not have (Civil Code § 1770(a)(5));

(c)    Defendant has falsely represented that the Products are of a particular standard, quality, or grade, which they are not (Civil Code § 1770(a)(7)); and

(d)    Defendant advertised the Products with an intent not to sell the Products as advertised (Civil Code § 1770(a)(9)).

54.    Defendant violated the CLRA because the Products are not safe for children and cannot be lawfully sold in California. Defendant knew, should have

CROSNER LEGAL, P.C.

known, and/or recklessly disregarded that its Products contain unlawful levels of DNOP and can harm children, and that the labeling and advertising claims are illegal.

55.   Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights and were wanton and malicious.

56.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that its Products have characteristics which they do not have.

57.   Pursuant to Civil Code section 1782(d), Plaintiff and members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein, and for restitution and disgorgement.

58.   Pursuant to Civil Code section 1782, on August 15, 2022, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Defendant has failed to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the CLRA. Accordingly, Plaintiff seeks actual, punitive, and statutory damages, as appropriate.

59.   Pursuant to § 1780(d) of the CLRA, attached as **Exhibit 1** is an affidavit showing that this action was commenced in a proper forum.

## <u>COUNT II</u>

### Violation of Unfair Competition Law ("UCL")
### Business & Professional Code §§ 17200, *et seq.*

60.   Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

CROSNER LEGAL, P.C.

61.    Plaintiff brings this claim individually and on behalf of members of the California Subclass against Defendant.

62.    Defendant is subject to the UCL, Bus. & Prof. Code § 17200 *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." The UCL also provides for injunctive relief and restitution for violations.

63.    "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

64.    Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

65.    Defendant has violated the UCL's "unlawful prong" as a result of its violations of the CLRA and California Health & Safety Code. By failing to comply with state regulations governing the use of phthalates including DNOP, in any toy or childcare product intended for use by a child under the age of three years, Defendant violated Health & Saf. Code § 108937 by selling Products which are toys that can be placed in a child's mouth, contain unlawful levels of DNOP, and are intended for use by children under the age of three years. Throughout the Class Period, Defendant committed acts of unfair competition, as defined by § 17200, by using unlawful, false, and misleading statements to promote the sale of the Products, as described herein.

66.    Defendant's misrepresentations, omissions, and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive,

CROSNER LEGAL, P.C.

and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct violates the California public policy of protecting young children from high levels of phthalates as evidenced by California's Health and Safety Code. Defendant's conduct is unfair in that the harm to Plaintiff and members of the California Subclass arising from Defendant's conduct outweighs the utility, if any, of those practices.

67.    Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the Products are safe for young children to use. Defendant's failure to disclose the toxicity of Spark Toys and advertising the Products for children two years and older is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about Products intended to be used by young children. Taking advantage of that trust, Defendant misrepresents the safety of its Products to increase its sales. Consumers believe that Defendant is an authority on the safety and quality of Spark Toys for their children and therefore believe Defendant's representations that its Products are safe for young children to play with.

68.    Defendant's conduct described herein, violated the "fraudulent" prong of the UCL by representing that the Products were safe for children as young as two years, when in fact they were not.

69.    Plaintiff and members of the California Subclass are not sophisticated experts with independent knowledge of the formulations or safety of the Products, and they acted reasonably when they purchased the Products based on their belief that Defendant's representations were true.

70.    Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

Case No.: 2:22-cv-08380-SB-PV
FIRST AMENDED CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

71.    As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the California Subclass have suffered injury and actual out of pocket losses as a result of Defendant's unfair, unlawful, and fraudulent business acts and practices because: (a) Plaintiff and members of the California Subclass would not have purchased the Products on the same terms if they had known the true facts regarding the contents, and potential harm that can result from the Products; (b) Plaintiff and members of the California Subclass paid a price premium due to the misrepresentations of Defendant's Products; and (c) Defendant's Products did not have the quality, safety or value as promised.

72.    Pursuant to California Business & Professions Code § 17203, Plaintiff and members of the California Subclass are therefore entitled to: (a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

## **COUNT III**

### **Breach of Express Warranty**

73.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

74.    Plaintiff brings this claim individually and on behalf of members of the Multi-State Class against Defendant.

75.    Defendant promised and expressly warranted that the Products are safe for children over the age of two. Every Product sold to Plaintiff and the members of the Multi-State Class came in a container with the written representation on the front that it is safe for children "2+."

76.    These promises and affirmations of fact constitute express warranties that

CROSNER LEGAL, P.C.

became part of the basis of the bargain between Plaintiff and the members of the Multi-State Class, on the one hand, and Defendant, on the other.

77.   All conditions precedent to Defendant's liability under the contract have been performed by Plaintiff and the Multi-State Class.

78.   Defendant has breached the terms of its express warranties by failing to provide Products that are safe for children over the age of two.

## COUNT IV

### Unjust Enrichment

79.   Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

80.   Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

81.   Plaintiff and Class members conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them. Defendant has knowledge of such benefits.

82.   Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that the Products were safe for children. This misrepresentation causes injuries to Plaintiff and Class Members, because they would not have purchased the Products if the true facts regarding the safety of the Products were known. Defendant also omitted material facts about the safety of the Products to consumers.

83.   Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

FIRST AMENDED CLASS ACTION COMPLAINT

**JURY DEMAND**

84.   Plaintiff demands a trial by jury on all issues so triable.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, requests for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Classes, and Plaintiff's attorneys as Class Counsel to represent members of the Classes;

(b) An order declaring Defendant's conduct violates the statutes referenced herein;

(c) Entering preliminary and permanent injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective advertising campaign;

(d) Awarding monetary damages, including treble damages;

(e) Awarding punitive damages;

(f) Awarding Plaintiff and the Class, the Multi-State Class, and the California Subclass Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, pre- and post-judgment interest on any amounts awarded, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: December 15, 2022          **CROSNER LEGAL, P.C.**

By: _/s/ Zachary M. Crosner_
Michael R. Crosner
Zachary M. Crosner
Chad A. Saunders
Craig W. Straub

Attorneys for Plaintiff

CROSNER LEGAL, P.C.