1
2
3
4
5
6
7
8

CROSNER LEGAL, P.C.
Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)
Craig W. Straub (SBN 249032)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429
zach@crosnerlegal.com
chad@crosnerlegal.com
craig@crosnerlegal.com

Attorneys for Plaintiff

9
10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

JINHUI KIM, individually and on
behalf of all others similarly situated,

            Plaintiff,

      v.

WALMART INC.,

            Defendant.

Case No.: 2:22-cv-08380-SB-PVC

**SECOND AMENDED CLASS
ACTION COMPLAINT**

Judge: Hon. Stanley Blumenfeld Jr.
Courtroom: 6C

Case Filed: October 6, 2022
FAC Filed: December 15, 2022
Trial Date: March 25, 2024

**<u>JURY TRIAL DEMANDED</u>**

19
20
21
22
23
24
25
26
27
28

SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Jinhui Kim ("Plaintiff") brings this action against Defendant Walmart Inc. ("Defendant" or "Walmart"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including an investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.    This is a consumer protection action brought by Plaintiff, on behalf of herself and all other similarly situated California consumers, for damages related to Defendant's continuing sale to consumers of its Spark Toys which are intended for use by children under the age of three that can be placed in child's mouth and contain high levels of the phthalate called Di-n-octyl phthalate ("Spark Toys" or "Products").

2.    Defendant has and continues to manufacture, distribute, sell, and offer to sell the Spark Toys including the Spark Toys purchased by Plaintiff Kim to consumers containing extremely high levels of the phthalate Di-n-octyl phthalate ("DNOP"). Plaintiff Kim purchased the Spark Squishy Animals Toys (UPC code 8449576183) and Spark Animal Set Toys (UPC code 8449575749).

3.    The Spark Toys purchased by Plaintiff Kim are labeled for children ages "2+." The Spark Toys also include the Spark Farm Book with Puppets which is labeled for children "0+." Formal discovery is likely to reveal additional Spark Toys which are intended for use by children under the age of three and can be placed in a child's mouth that contain illegal levels of DNOP.

4.    The Spark Toys are approximately three inches in length and contain small protruding appendages (i.e., ears, legs, tails) which can easily be placed in a child's mouth.

5.    Consumers purchase the Spark Toys reasonably believing that they are non-toxic, safe, and comply with California's safety standards. However, the Products contain dangerously high levels of DNOP in violation of California state law.

CROSNER LEGAL, P.C.

SECOND AMENDED CLASS ACTION COMPLAINT

6. Scientific research has repeatedly concluded that children are especially vulnerable to the toxic effects of phthalates. Accordingly, California Health & Safety Code § 108937 provides limitations for the levels of phthalates than can be in children's toys. For example, subsection (b) provides that no entity shall manufacture, sell, or distribute toys intended for children under three years of age if the toy contains DNOP in concentrations exceeding 0.1 percent. Here, the concentrations of DNOP in the Products **are over forty times** the maximum limit allowed by the state of California. California consumers are at risk of exposure to DNOP from the Products.

7. As a direct and proximate result of Defendant's unlawful, false, and misleading advertising and marketing practices, Defendant has caused Plaintiff and the members of the Class to purchase an unlawful product which does not, and cannot, perform as represented. Plaintiff and other similarly situated consumers have been harmed in the amount they paid for the Spark Toys.

8. Plaintiff brings this action individually, and on behalf of all California purchasers of the Products, for violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.* and breach of California's express warranty common law.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members likely exceed $5,000,000 in the aggregate, exclusive of interest and costs. The $5 million requirement is possibly met due to the fact that Plaintiff is seeking punitive damages and attorneys' fees and costs. Defendant alleges that this Court has jurisdiction under 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds $75,000. *See* Dkt. No. 1 (Notice of Removal).

CROSNER LEGAL, P.C.

10.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sales of Spark Toys to consumers, including Plaintiff. Walmart maintains approximately 320 retail stores in California. Walmart's business partner related to the manufacture, design, testing, and distribution of the Spark Toys is Boley Corporation. Boley Corporation is headquartered in Chino, California. The label of the Spark Toys states that Walmart is the distributor.

11.    Venue is proper in this District because one or more of the occurrences of the wrongful conduct occurred and continues to occur, in this District, and Defendant conducted and continues to conduct, business in this District. Plaintiff purchased the Spark Toys in this District.

**PARTIES**

**12.**    Plaintiff Jinhui Kim is an individual consumer who, at all times relevant to this action, was a citizen of and resided in California. Before purchasing Defendant's Spark Toys, Plaintiff saw Defendant's representations by reading the label of the "Spark Create Imagine Animal Set 2+" 6-piece product and "Spark Create Imagine Squishy Animals 2+" 4-piece product, including that the Products were for children ages "2+."  In reliance on the labeling claims that the Products were for children under the age of three and on the belief that the products were safe for children under the age of three, Plaintiff purchased the Spark Toys at a Walmart retail store located at 1827 Walnut Grove Ave., Rosemead, California in August 2022. Relying on the Product's representations, Plaintiff paid approximately $3 for the Spark Imagine Squishy Animals toys and approximately $5 for the Spark Imagine Animal Set toys. In total, Plaintiff spent approximately $14 on Defendant's Spark Toys. Had Plaintiff known the truth—that the Products do not comply with California

CROSNER LEGAL, P.C.

law and are harmful to children under the age of three—she would not have purchased the Products. Plaintiff did not receive the benefit of the bargain, because Defendant's Products do not and cannot be legally purchased. By purchasing the unlawful and dangerous Products, Plaintiff suffered injury-in-fact and lost money.

13.    Defendant Walmart Inc. is a publicly-traded Delaware corporation, with a principal place of business in Bentonville, Arkansas. Defendant manufactures, markets, and advertises and distributes the Products throughout the United States, including in California. Defendant manufactured, marketed, and sold the Spark Toys during the Class Period. The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business operations concerning the Spark Toys were carried out by Defendant.

14.    Walmart sells the Spark Toys under the brand name "Spark Create Imagine" which is Walmart's trademarked brand. The Products' labels state that Walmart distributes the Products.

## **FACTUAL BACKGROUND**

### A.    Defendant's Advertising and Labeling of the Spark Toys

15.    Defendant's Spark Toys are sold nationwide at Walmart retail chains. On the packaging of the Spark Toys Defendant advertises that they are safe for children "2+" or "0+":

 

SECOND AMENDED CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROSNER LEGAL, P.C.



SECOND AMENDED CLASS ACTION COMPLAINT

16.   Defendant reinforces that the products are safe for young children by stating that the Products encourage "Fine Motor Skills, Sensory Development, and Holding":





17.     Similarly, on Defendant's website, walmart.com, Defendant advertises that the Products are safe for children "2 Years & Up" which is highlighted below:

**Brand**

Spark Create Imagine

**Assembled Product Weight**

0.5 lb

**Age Range**

2 Years & Up

**Gender**

Unisex

**Manufacturer Part Number**

76183

**Features**

Multicolored assortment of animal figurines

**Brand**

Spark Create Imagine

**Manufacturer Part Number**

75749

**Gender**

Unisex

**Age Range**

2 to 4 years

**B.      The Dangers of Phthalates**

18.     Phthalates, or esters of phthalic acid, are environmental pollutants. Phthalates are plasticizers which make polymer materials elastic to make the final product cheaper and easier to produce. Phthalates do not form covalent bonds with the polymers with which they are mixed, and thus, can migrate to products surface and which can be released to the environment. Phthalates enter a child's system through the digestive system, through contact with skin, and through the licking and sucking of objects made of plastics. Young children are at risk of excessive exposure to phthalates because they often place non-consumable objects in the mouth.

19.     Phthalates which the scientific community and regulatory agencies have expressed concern for causing negative health effects are di-(2-ethylhexyl) phthalate (DEHP), dibutyl phthalate (DBP), benzyl butyl phthalate (BBP), diisononyl phthalate (DINP), diisodecyl phthalate (DIDP), and DNOP.

CROSNER LEGAL, P.C.

20.   Phthalates negatively impact the growth and development of the human fetus, infants, and toddlers. They can cause a dysfunction of the hormonal system by disturbing the synthesis, concentration, and action of natural hormones responsible for the growth and development of sex organs. Phthalates have been found to affect estrogen and androgen receptor; exert a negative effect on androgens including hypospadias (abnormal location of the male external urethral orifice on the ventral side of the penis); impair sperm function by lowering sperm counts and sperm motility increasing the risk of impairment of sperm function and mobility; and reduce testosterone production. Phthalates have also been found to negatively impact a child's immune system causing an increased risk of asthma and allergies.

21.   As such, the California legislature has prohibited the use of phthalates, including DNOP, in concentrations exceeding 0.1 percent by mass in any toy or childcare product intended for use by a child under the age of three years if the product can be placed in the child's mouth. Heath & Saf. Code § 108937. California Assembly Bill 1108 was passed on January 1, 2009, and specifically states that "[t]here is extensive scientific literature reporting the hormone-disrupting effects phthalates and substantial evidence that levels of the phthalates of concern are found in humans at levels associated with adverse effects." Cal. A.B. No.1108 at §1(b) (Jan 1, 2009).

22.   Likewise, the European Commission Regulation prohibits the use of phthalates, including DNOP, at concentrations above 0.1 percent by mass from being used in toys and childcare products which can be placed in the mouth of a child.

23.   Vermont's Department of Public Health issued a report in November 2018. It found that DNOP "can affect how babies develop as well as harm the liver, kidney, thyroid and immune system in humans." It also noted that DNOP exposure occurs from skin contact with consumer products that contain DNOP.

24.   The American Academy of Pediatrics ("AAP") states that phthalates are some of the most concerning additives in child products because they "may affect

CROSNER LEGAL, P.C.

male genital development, increase childhood obesity, and contribute to cardiovascular disease." The AAP has also published findings that "several studies have reported detectable concentrations of phthalate metabolites in children's urine. Concerns over phthalate toxicity have emerged because of growing evidence of adverse impacts on endocrine, reproductive, immunologic and neurologic system function in animals and humans." The AAP warns that "early childhood [is] thought to be the most sensitive time windows for potential adverse health impacts given the rapid period of cell differentiation and organ development."

25.    Silva and co-authors (2021) published research examining 471 children in a population-based and cross-sectional study. The authors examined phthalate and bisphenol urinary concentrations and concluded that "DNOP metabolites are associated with overweight and an adverse cardiovascular profile in childhood."[1] The authors note that the scientific evidence has shown that phthalates are considered endocrine disrupting chemicals that affect childhood health and children are more vulnerable to exposure to these chemicals than adults. "As a result of the widespread use of phthalate metabolites and bisphenols-related products, children can be exposed to these potential harmful chemicals through different pathways, such as ingestion, inhalation, and dermal contact. Phthalates and bisphenols may interfere with endocrine processes, resulting in a deviation from the normal homeostatic control that may lead to an adverse cardiovascular profile."

26.    Despite these prohibitions and known dangers to children, Defendant has sold and continues to sell the Products which contain extremely high levels of DNOP. Instead of warning consumers and parents, Defendant advertises that the Spark Toys are to be used by children under the age of three.

---

[1]    Silva C.V.C et al. Phthalate and Bisphenol Urinary Concentrations, Body Fat Measures, and Cardiovascular Risk Factors in Dutch School-Age Children. Obesity. 2021.29:409-417.

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROSNER LEGAL, P.C.

C.    **Certified Laboratory Testing Confirms the Spark Toys Contain DNOP Levels which Exceed California's Legal Limit**

27.    Certified testing by an accredited laboratory conducted tests of the Spark Toys. The certified lab utilized the Environmental Protect Agency's Method 8270C ("EPA Method 8270C"). EPA Method 8270C is a reliable testing method for the determination DNOP in samples. EPA Method 8270C includes DNOP in its target analyte list, and the method specifies the use of gas chromatography/mass spectrometry (GC/MS) to detect and quantify DNOP in the samples. The GC/MS instrument is capable of separating individual compounds based on their physical and chemical properties and detecting them based on their unique mass-to-charge ratio.

28.    The laboratory tests concluded that the Spark Toys contain between 3.84 to 4.19 percent by mass DNOP. This is approximately forty times California's legally allowed amount of DNOP. The certified lab conducted the tests on August 12, 2022.

## THE IMPACT OF DEFENDANT'S WRONGFUL CONDUCT

29.    Defendant has ignored California law and the scientific evidence demonstrating that products containing high levels of phthalates, including DNOP, are not safe for children. Yet, Defendant advertises Spark Toys as safe for children under the age of three when they, in fact, contain unlawful levels of DNOP. Consumers, like Plaintiff, have relied on Defendant's misrepresentation that Spark Toys are safe for children under the age of three. Defendant's omissions and misrepresentations have caused numerous consumers to purchase the Products for their young children, relying on Defendant's false claims that Spark Toys are safe for children.

30.    As the distributor and marketer of Spark Toys, Defendant possesses specialized knowledge regarding its content and effects of its ingredients, and Defendant is in a superior position to know whether Spark Toys are safe for children

SECOND AMENDED CLASS ACTION COMPLAINT

1    under the age of three.

2        31.    Specifically, Defendant knew, but failed to disclose, or should have

3    known, that its Spark Toys are a product that is unlawfully sold, as it contains

4    unlawful concentrations of DNOP, and may harm children.

5        32.    Defendant knew, but failed to disclose, or should have known, that Spark

6    Toys are toxic for children because the science has determined that DNOP is harmful

7    to children, as explained above.

8        33.    Plaintiff and the Class members have been and will continue to be

9    deceived or misled by Defendant's false and deceptive representations that Spark

10   Toys are safe for children.

11       34.    Defendant's representations and omissions were a material factor in

12   influencing Plaintiff's and the class members' decision to purchase Defendant's

13   Spark Toys. Defendant's conduct has injured Plaintiff and the class members because

14   Spark Toys are not safe for young children as they contain unlawful concentrations

15   of DNOP. Spark Toys retail for approximately $3-$5 for a set of toys. Had Plaintiff

16   and other reasonable consumers known this, they would not have purchased Spark

17   Toys or would not have paid the prices they paid. Furthermore, had Plaintiff and other

18   reasonable consumers known that Spark Toys are not safe for children and cannot be

19   legally sold, they would not have purchased Spark Toys or would not have paid the

20   prices they paid.

### CLASS ACTION ALLEGATIONS

22       35.    Plaintiff brings this class action Federal Rules of Civil Procedure 23(b)(3)

23   on behalf of the following on behalf of the following class:

24
25           All persons in California who purchased Spark Toys for personal use
             until the date notice is disseminated.
26
     (the "Class").

CROSNER LEGAL, P.C.

36.    Excluded from the from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

37.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

38.    The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

39.    <u>Numerosity</u>: Class Members are so numerous that the joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

40.    <u>Commonality and Predominance</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.  Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b.  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

    c.  Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive the public;

CROSNER LEGAL, P.C.

SECOND AMENDED CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

d.  Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

41.  <u>Typicality</u>: Plaintiff is a member of the Class Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

42.  <u>Adequacy</u>: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the CLRA and breach of warranty claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating Plaintiff's rights; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

43.  The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

SECOND AMENDED CLASS ACTION COMPLAINT

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase the Products.

44. Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct.

# COUNT I

## Violation of Consumer Legal Remedies Act ("CLRA")
## Civil Code §§ 1750, *et seq*

45.    Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs as if fully set forth verbatim herein.

46.    Plaintiff brings this claim individually and on behalf of the Class against Defendant.

47.    At all times relevant hereto, Plaintiff and members of the Class were "consumer[s]," as defined in Civil Code section 1761(d).

48.    At all relevant times, Defendant constituted a "person," as defined in Civil Code section 1761(c).

49.    At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in Civil Code section 1761(a).

50.    The purchases of the Products by Plaintiff and members of the Class were and are "transactions" within the meaning of Civil Code section 1761(e).

51.    Defendant disseminated, or caused to be disseminated, through its advertising—that the Products are safe for children under the age of three and are lawfully sold in California which they are not because the Products contain unlawful levels of DNOP and are dangerous to young children. Defendant's representations and/or omissions violate the CLRA by:

(a)    Defendant misrepresented the source, sponsorship, approval, or certification of the Products (Civil Code § 1770(a)(2));

(b)    Defendant represented that the Products have approval, characteristics, uses or benefits that they do not have (Civil Code § 1770(a)(5));

(c)    Defendant has falsely represented that the Products are of a particular standard, quality, or grade, which they are not (Civil Code § 1770(a)(7)); and

SECOND AMENDED CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

(d)   Defendant advertised the Products with an intent not to sell the Products as advertised (Civil Code § 1770(a)(9)).

52.   Defendant violated the CLRA because the Products are not safe for children and cannot be lawfully sold in California. Defendant knew, should have known, and/or recklessly disregarded that its Products contain unlawful levels of DNOP and can harm children, and that the labeling and advertising claims are illegal.

53.   Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights and were wanton and malicious.

54.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that its Products have characteristics that they do not have.

55.   Plaintiff and members of the Class could not have reasonably avoided such injury. Plaintiff and members of the Class were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiffs and members of the Class would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

56.   Plaintiff and members of the Class suffered harm as a result of Defendant's violations of the CLRA because they relied on Defendant's representations and material omissions in deciding to purchase the Products. The representations and material omissions were a substantial factor in deciding the purchase of the Products. The representations and omissions were material because a reasonable consumer would consider it important in deciding whether to purchase the Products. An omission that relates to a safety hazard is material.

57.   Pursuant to Civil Code section 1782, on August 15, 2022, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

CROSNER LEGAL, P.C.

1  Defendant has failed to rectify or agree to rectify the problems associated with the

2  actions detailed herein and give notice to all affected consumers within 30 days of the

3  date of written notice pursuant to § 1782 of the CLRA. Accordingly, Plaintiff seeks

4  actual, punitive, and statutory damages, as appropriate.

5        58.   As a direct and proximate result of Defendant's misconduct in violation

6  of the CLRA, Plaintiff and members of the Class were harmed in the amount of the

7  purchase price they paid for the Products. Further, Plaintiff and members of the Class

8  have suffered and continue to suffer economic losses and other damages including,

9  but not limited to, the amounts paid for the Products, and any interest that would have

10  accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff

11  seeks a monetary award for violation of the CLRA in the form of damages to

12  compensate Plaintiff and the Class for said monies.

13        59.   Defendant's unfair, fraudulent, and unlawful conduct described herein

14  constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of

15  punitive damages as permitted by law. Defendant's misconduct is malicious as

16  Defendant acted with the intent to cause Plaintiff and consumers to pay for Products

17  that they were not, in fact, receiving. Defendant willfully and knowingly disregarded

18  the rights of Plaintiff and consumers as Defendant was aware of the probable

19  dangerous consequences of its conduct and deliberately failed to avoid misleading

20  consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all

21  relevant times, said the conduct was so vile, base, and/or contemptible that reasonable

22  people would look down upon it and/or otherwise would despise such corporate

23  misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust

24  hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent

25  as Defendant, at all relevant times, intentionally misrepresented and/or concealed

26  material facts with the intent to deceive Plaintiff and consumers. The wrongful

27  conduct constituting malice, oppression, and/or fraud was committed, authorized,

28

CROSNER LEGAL, P.C.

17         Case No. 2:22-cv-08380-SB-PVC
SECOND AMENDED CLASS ACTION COMPLAINT

adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

60.    Pursuant to § 1780(d) of the CLRA, attached as **Exhibit 1** is an affidavit showing that this action was commenced in a proper forum.

## COUNT II

### Breach of Express Warranty

61.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

62.    Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

63.    Defendant promised and expressly warranted that the Products are safe for children under the age of three. Every Product sold to Plaintiff and the members of the Class came in a container with the written representation on the front that it is safe for children under the age of three.

64.    Defendant was provided timely pre-suit notice of the breach of express warranty. *See supra* at ¶ 56.

65.    These promises and affirmations of fact constitute express warranties that became part of the basis of the bargain between Plaintiff and the members of the Class, on the one hand, and Defendant, on the other.

66.    All conditions precedent to Defendant's liability under the contract have been performed by Plaintiff and the Class.

67.    Defendant has breached the terms of its express warranties by failing to provide Products that are safe for children under the age of three.

68.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class

have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages to compensate Plaintiff and the Class for said monies.

69.    Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was contemptible that reasonable people would look down upon it and otherwise would despise such misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## **JURY DEMAND**

70.    Plaintiff demands a trial by jury on all issues so triable.

CROSNER LEGAL, P.C.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class, and Plaintiff's attorneys as Class Counsel to represent members of the Class;

(b) An order declaring Defendant's conduct violates the statutes referenced herein;

(c) Awarding monetary damages, including treble damages;

(e) Awarding punitive damages;

(f) Awarding Plaintiff and the Class and the Class Members their costs and expenses incurred in this action, including the reasonable allowance of fees for Plaintiff's attorneys and experts, pre-and post-judgment interest on any amounts awarded, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: March 30, 2023                    CROSNER LEGAL, P.C.

                                         By: _/s/ Craig W. Straub_
                                         Zachary M. Crosner
                                         Chad A. Saunders
                                         Craig W. Straub

                                         Attorneys for Plaintiff

CROSNER LEGAL, P.C.